No. 2940

Second Circuit

---

**SECURITY FINANCE CO. v. L. S. EDMONDS & CO., INC.**

---

(April 9, 1931. Opinion and Decree.)

---

W. C. Boone, of Homer, attorney for plaintiff, appellant.

Atkins & Meadors, of Homer, attorneys for defendant, appellee.

CULPEPPER, J. Plaintiff has sued to recover on six promissory notes alleged to have been executed by defendant in connection with, and as representing, the purchase price of three Victrolas and twelve Victrola records sold to defendant by the Brenard Manufacturing Company, on August 28, 1923. Plaintiff alleges it purchased the notes from the Brenard Manufacturing Company for a valuable consideration, before maturity, without notice, and that it is the holder and owner of the notes in good faith.

Defendant, answering, makes a general denial of liability, and, further, answering, makes the following special defense in paragraph six of its answer:

"Defendant, further answering, shows the court that the notes sued on were signed by one E. L. Edmonds, who, at the time of same was neither an officer of its corporation nor authorized or empowered in any way to sign its name to said notes, and that the only connection E. L. Edmonds had with it at the time of said signing of said notes was as a clerk, and, as such he had no authority, either express or implied, to bind it in any way to any kind of obligation and especially the kind herein sued on; and that defendant has never ratified or confirmed in any way the said unauthorized act of said E. L. Edmonds."

From a judgment rejecting plaintiff's demands, plaintiff has appealed.

The testimony shows that the Brenard Manufacturing Company is domiciled in Iowa City, Iowa, and is engaged, among other things possibly, in the business of selling at wholesale Victrolas and Victrola records; that its salesman called upon Mr. L. S. Edmonds, the manager of and buyer for defendant company, at its place of business at Lisbon, in Claiborne parish, Louisiana, on the morning of August 28, 1923, and spent the greater portion of the forenoon trying to sell Mr. Edmonds a line of his merchandise. Mr. Edmonds refused to buy. At noon, Mr. Edmonds left the store and went home to dinner, leaving his young brother, Mr. E. L. Edmonds, in charge of the store. The younger Edmonds, according to the testimony, was about 18 or 19 years of age, and was employed as a clerk in the store at the time.

During the noon hour, in the absence of the elder brother, the salesman approached young Mr. Edmonds, renewed his efforts to sell the defendant through him, and succeeded. An order was signed for three Victrolas and twelve Victrola records, at a total price of $422. The order given was signed in the following manner:

"L. S. Edmonds & Company,
  By E. L. Edmonds, Authorized Buyer."
He signed the six notes:
"L. S. Edmonds & Company,
  By E. L. Edmonds."

The first five notes executed to represent the purchase price were for $80 each, and the last or sixth note, for $20. They are dated August 28, 1923, made payable to the Brenard Manufacturing Company, and mature monthly. The first note was made to fall due two months after date. In event of default in payment, they stipulated that a reasonable attorney's fee should be paid by the maker. No interest is mentioned, but plaintiff prays for interest at the rate of 5 per cent per annum from December 1, 1923. The notes

appear to have been regularly endorsed by the Brenard Manufacturing Company, over to the Security Finance Company, the date, however, not being shown.

Mr. L. S. Edmonds testified that when he returned to the store from lunch, the salesman had left. Within a few days the goods arrived. He did not know what they consisted of until they were opened, but upon finding what they were he inquired of his brother, E. L. Edmonds, and was told all about the transaction, as outlined above. Mr. L. S. Edmonds testifies that this was the first he knew about it; that he did not authorize his young brother to order the goods, and that it was wholly without his knowledge and consent. This, as well as all the other evidence on this point, clearly indicates that this purchase was, in fact, unauthorized by defendant company, and was without the knowledge and consent of its responsible management.

Defendant contends that it never ratified this unauthorized purchase. Mr. L. S. Edmonds testifies that he made no effort to sell the goods, but he admits having held the goods until January 18, 1924, or for more than four months, when he returned the three Victrolas to the Brenard Manufacturing Company, but kept the twelve Victrola records. In his letter advising that the Victrolas were being returned, he stated that he was keeping the records and was willing to pay for them. He testifies that within a few days after the goods arrived at his store, he wrote the Brenard Manufacturing Company refusing to keep the goods and advising the company of the fact that the goods had been ordered without the knowledge and consent of his company, and that the goods were being held subject to the Brenard Manufacturing Company's orders. He offered in evidence what he says is a carbon copy of the letter which he wrote on that occasion. This carbon copy, dated September 8, 1923, reads as follows:

"I have received some Victrolas that I knew nothing about until they arrived at the house; now the man that bought these Victrolas hadn't told me anything about buying them and I am holding them at your request. Hoping to hear from you by return mail."

Mr. Edmonds further testifies that he did not receive any reply to the above letter, and he wrote another about thirty days later, in which he again called their attention to the matter, and wanted to send the goods back. This second letter is dated October 1, 1923, and reads as follows:

"I wrote some thirty days ago about the Victrolas, and I have not received any reply as to what to do with the Victrolas. "I have the Victrolas here and I want to know what to do with them. I haven't tried to sell the Victrolas because I didn't buy them and I feel that I am not responsible for them, tho' if you will advise me what to do with them I would be glad to help you. "I will keep the Victrolas here till you tell me what to do with them. Let me hear from you about this matter at once."

Mr. Edmonds makes no mention in either of these letters about the records, which constituted a part of the order. Apparently he was satisfied with the records and was willing to keep and did keep them, for, in his next letter, dated January 18, 1924, he states that:

"being unable to sell your machines we are to day returning the same by freight. We are keeping the records, which we are willing to pay for."

This letter was offered by plaintiff for

the purpose of showing that defendant had, in fact, been trying to sell the goods, as well as to show that defendant retained part of them, and had thereby ratified the original purchase. Mr. Edmonds admits that he wrote this letter.

Mr. Loveland, testifying for plaintiff, says he is a member of the firm of the Brenard Manufacturing Company, and that at the time the order was received he had charge of the filling of all orders which came to their office, and that he conducted all the correspondence for his company, both at that time and since. His company, he said, never received the letters which Mr. Edmonds testifies he wrote on September 8, and October 1, 1923. He testifies that the first intimation his company received from defendant company that the order for these goods was not satisfactory, or that defendant wanted to return the goods, was the letter of January 18, 1924, quoted from above. Mr. Loveland testifies that when his company received this letter of January 18, he replied, his letter in reply being dated January 23, 1924, copy of which was offered by plaintiff. No reference is made in this reply to any previous advice or complaint having been received from plaintiff. The tone of this letter indicates that no notice had before been given the Brenard Manufacturing Company of defendant's intention to disavow the purchase. Correspondence offered by plaintiff indicated that the Brenard Manufacturing Company had been offering suggestions tending to enable defendant company to sell the merchandise in question. According to this correspondence, there had been considerable communications between the two companies in none of which was any reference made to a repudiation of the order given, by either party. However, the young man, Mr. E. L. Edmonds, testifies

that he alone, and without the knowledge of the other member of the company, had been carrying on this correspondence. He had initiated the transaction, he said, and thought he would carry it through without letting any one else know anything about it. This may be true, but it certainly had the effect of creating the impression upon the Brenard Manufacturing Company that the sale was entirely satisfactory with the defendant company. Also it served to form the basis of showing good faith on the part of the Brenard Manufacturing Company in its dealings with defendant company after the order was given, even if its salesman had not been in good faith in taking the order from this young man.

The contents of the letter of January 18, do not correspond in language, spelling and other features with the carbon copies dated September 9 and October 1. In the January letter, the inability to sell the Victrolas was stressed. This indicates that an effort had been made to sell them. In the letters he claims to have written previous to that time, it was stated that they were being held subject to the orders of the Brenard Manufacturing Company. In view of these inconsistencies, and the testimony of Mr. Loveland, that his company never did receive the letters indicated by the two carbon copies, a grave doubt is raised as to whether these letters were, in fact, ever actually dispatched. Be that as it may, we think the letter of January 18 was the first letter written by Mr. L. S. Edmonds ever received by the Brenard Manufacturing Company refusing to retain the merchandise. The defendant company, it is clear, had, in fact, been trying to sell these goods in the meantime. That being true, defendant, we think, waited too long to disaffirm the purchase. The action of defendant in retaining the merchandise from shortly after August 28,

1923, until January 18, 1924, or more than four months, and then returning a part of the goods because it had been unable to sell the merchandise, certainly implied a consent to the purchase, even though the purchase was unauthorized.

Article 1816 of the Civil Code provides:

"*Actions without words, either written or spoken, are presumptive evidence of a contract, when they are done under circumstances that naturally imply a consent to such contract. To receive goods from a merchant without any express promise, and to use them, implies a contract to pay the value.* * * *"

In Clark & Marshall on Corporations, page 2197, the law applicable to a similar state of facts is laid down as follows:

"It is well settled, in most jurisdictions, that *if an officer or agent of a corporation acquires or possesses knowledge of facts, in the course of his employment, and as to matters which are in the scope of his authority, his knowledge is imputable to the corporation.*"

We think Mr. L. S. Edmonds was such an officer.

Aside from the reasons above stated, there is another reason why defendant has failed to establish that it disaffirmed the purchase of the merchandise embraced in the order given, and that is, the defendant retained part of the merchandise.

Giving full credence to the letters of September and October, Mr. Edmonds makes no reference therein to those twelve records. The only subject about which he wrote was the Victrolas and, in reading these letters, one would infer that the records were satisfactory. In fact, in one of the letters, Mr. Edmonds specifically states that he is keeping the records and is willing to pay for them. Under well settled jurisprudence, such an act is equivalent to a ratification of an unauthorized contract. The purchase cannot be revoked in part and ratified in part. One cannot affirm what is to his advantage and reject what is not. In the case of Advance Thresher Co. v. Roger, 123 La. 1067, 49 So. 709, the court, on this point, observes:

"*The retention of a part of the goods acts as a ratification of the unauthorized purchase of said goods.*"

And to the same effect is the principle announced in S. Herbert Golden Co. v. Sternberg, 10 Orleans App. 293:

"Where defendant keeps goods purchased for his account by an unauthorized person, the vendor may, at his option, treat such action as a conversion or as a ratification."

And in Johnson v. Carrere, 45 La. Ann. 847, 13 So. 195, the court said:

"A retention of a part of the goods acts as a ratification of the unauthorized purchase of said goods."

In view of the evidence, and the law applicable thereto, this court is of the opinion that defendant, in legal effect, ratified the purchase. The evidence shows that plaintiff acquired the notes sued on in due course, and that it is the holder and owner of same in good faith.

The judgment of the lower court will therefore be reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, the Finance Security Company, and against the defendant, L. S. Edmonds & Company, Incorporated, in the sum of $422, together with 5 per cent interest per annum on said amount from December 1, 1923, until paid. The demand for attorney's fee is rejected for want of proof to establish same.

It is further ordered that defendant pay the costs of both courts.